[Civ. No. 23001. Fourth Dist., Div. Two. Jan. 16, 1981.]

JANE R. LONG et al., Plaintiffs and Appellants, v.
CHEMEHUEVI INDIAN RESERVATION,
Defendant and Appellant.

854

COUNSEL

Long & Jaskulski and George Edwin Long for Plaintiffs and Appellants.

Arthur Paul Berg, Ruth A. Phelps and Berg & Phelps for Defendant and Respondent.

OPINION

THE COURT.*—In a wrongful death action, the trial court sustained the general demurrer without leave to amend of the Chemehuevi Indian Tribe, and ordered that the case be dismissed as to the tribe due to lack of subject jurisdiction. Longs appeal from that order. Other named defendants are not party to this appeal.

FACTS

On October 22, 1978, plaintiffs' decedent, William Long, was killed in a boating accident at the Havasu Landing Resort Marina, on the Colorado River. The marina, located on the Chemehuevi Indian Reservation, is allegedly owned and operated by the Chemehuevi Indian Tribe as a profit-seeking operation open to the public.

Longs brought a wrongful death action against the Chemehuevi Tribe, alleging negligent operation of the boat docks. On August 16, 1979, the Chemehuevi Tribe filed a general demurrer to the Longs' complaint, stating that the tribe was an autonomous, self-governing body under the protection of the federal government, enjoys sovereign immunity, and, absent some sort of waiver, is not subject to California jurisdiction. The trial judge sustained the tribe's demurrer and the case against it was dismissed on October 2, 1979.

DISCUSSION

I

SOVEREIGN IMMUNITY AND 28 U.S.C. SECTION 1360

■ Longs claim that 28 United States Code section 1360 grants

---

*Before Gardner, P. J., Kaufman, J., and McDaniel, J.

California virtually unlimited civil jurisdiction over the Chemehuevi Indian Tribe.[1] Section 1360 gives California jurisdiction over civil causes of action *between Indians* or *to which Indians are parties* arising in Indian country to the same extent that such courts have jurisdiction over other civil causes of action. (28 U.S.C. § 1360(a).) However, "[T]here is notably absent [in § 1360] any conferral of state jurisdiction over the tribes themselves...." (*Bryan* v. *Itasca County* (1976) 426 U.S. 373, 389 [48 L.Ed.2d 710, 721, 96 S.Ct. 2102, 2111]. See also, *Parker Drilling Co.* v. *Metlakatla Indian Community* (D. Alaska 1978) 451 F.Supp. 1127, 1138-1139; *Atkinson* v. *Haldane* (Alaska 1977) 569 P.2d 151, 167.)

As dependent, quasi-sovereign nations, Indian tribes such as the Chemehuevi enjoy sovereign immunity, and cannot be sued without the consent of Congress.[2] (*United States* v. *U. S. Fidelity Co.* (1940) 309 U.S. 506 [84 L.Ed. 894, 60 S.Ct. 653]; Goldberg, *Public Law 280: The Limits of State Jurisdiction Over Reservation Indians* (1975) 22 UCLA L. Rev. 535.) Tribal immunity is based on policy considerations rather than specific constitutional provisions and is generally considered

---

[1] 28 United States Code section 1360 says, in part: "(a) Each of the States or Territories listed in the following table shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country listed opposite the name of the State or Territory to the same extent that such State or Territory has jurisdiction over other civil causes of action, and those civil laws of such State or Territory that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State or Territory:

| State or Territory of | Indian country affected |
|---|---|
| California | All Indian country within the State |

"(c) Any tribal ordinance or custom heretofore or hereafter adopted by an Indian tribe, band, or community in the exercise of any authority which it may possess shall, if not inconsistent with any applicable civil law of the State, be given full force and effect in the determination of civil causes of action pursuant to this section."

[2] *Fort Mojave Tribe* v. *San Bernardino County* (9th Cir. 1976) 543 F.2d 1253, does not support the proposition that the Indian Tribes have been stripped of sovereign immunity. That case approved a county possessory interest tax imposed on non-Indian lessees of Indian land. Likewise *Agua Caliente Band, etc.* v. *City of Palm Springs* (C.D.Cal. 1972) 347 F.Supp. 42, basically a zoning authority case, does not address the concept of Indian sovereign immunity.

*Rincon Band of Mission Indians* v. *County of San Diego* (S.D.Cal. 1971) 324 F.Supp. 371, like our own decision in *People v. Miranda* (1980) 106 Cal.App.3d 504 [165 Cal.Rptr. 154], involves the acquisition of California jurisdiction over criminal offenses committed in Indian country. The civil aspects of the matter before us and the sovereign immunity question were not before the court in *Rincon* or before us in *Miranda*.

to be coextensive with the sovereign immunity of the federal government.[3] (*Hamilton* v. *Nakai* (9th Cir. 1971) 453 F.2d 152, 158-159.) While the sovereign immunity of the Indian nations is subject to the pleasure of Congress, a congressional waiver "is not to be lightly implied, but must be unequivocally expressed." (*People of State of Cal.* v. *Quechan Tribe of Indians* (9th Cir. 1979) 595 F.2d 1153, 1155.) Any ambiguity found in section 1360 must be resolved in favor of the Indians. (*People* v. *Rhoades* (1970) 12 Cal.App.3d 720, 723 [90 Cal.Rptr. 794]; *Santa Rosa Band of Indians* v. *Kings County* (9th Cir. 1975) 532 F.2d 655, 660; *Parker, supra*, 451 F.Supp. at p. 1140.)

*Quechan* summarizes the situation. "It is a well-established rule that Indian tribes are immune from suit. [Citations omitted.] The sovereign immunity of Indian tribes is similar to the sovereign immunity of the United States; neither can be sued without the consent of Congress. [Citations omitted.] When Congress does consent to suit, the abrogation of immunity is subject to whatever limitations or conditions Congress chooses to impose. [Citations omitted.] Any waiver of immunity is not to be lightly implied, but must be unequivocally expressed. [Citations omitted.]" (At p. 1155 of 595 F.2d.) *Quechan* concluded that tribal sovereign immunity was a bar to a declaratory relief action filed by the State of California.

No case has been cited to us, and we have found none, which concludes or even suggests, that 28 United States Code section 1360 conferred on California jurisdiction over the Indian tribes, as contrasted with individual Indian members of the tribes. The rule seems to remain as noted in *Washington* v. *Confederated Tribes* (1980) 447 U.S. 134 [65 L.Ed.2d 10, 100 S.Ct. 2069], that "it must be remembered that tri-

---

[3]Longs confuse the distinct doctrines of state and tribal immunity in their analysis of *Nevada* v. *Hall* (1979) 440 U.S. 410 [59 L.Ed.2d 416, 99 S.Ct. 1182]. Longs incorrectly offer *Hall* as authority for the position that California need only recognize the sovereign immunity of those public entities which the California Legislature chooses to acknowledge. They argue that unless the California Legislature grants the tribe immunity, the tribe has no immunity. *Hall* does not involve tribal immunity or Indians and does not support the Longs. *Hall* affirmed the determination of the California courts that Nevada did not have an immunity defense in California litigation concerning an auto collision in California involving a Nevada state vehicle on official Nevada business.

Similarly, *Owen* v. *City of Independence, Mo.* (1980) 445 U.S. 622 [63 L.Ed.2d 673, 100 S.Ct. 1398], rejected the immunity of a municipality from liability flowing from its constitutional violations and is of no aid. It did not involve tribal immunity or Indians. In *Atkinson, supra*, 569 P.2d at pages 167-170, analogizing a tribe with a municipal corporation is rejected.

bal sovereignty is dependent on and subordinate to only the Federal Government, not the States." (At 447 U.S., p. 154 [65 L.Ed.2d, at p. 29, 100 S.Ct., at p. 2081].)[4]

In the absence of a clear waiver, we must recognize the sovereign immunity of the Chemehuevi Tribe. (*Quechan, supra,* 595 F.2d at p. 1155.) Congress, in passing 28 United States Code section 1360, could have easily expressed its intent to grant the listed states complete jurisdiction over its resident tribes.[5] Congress' failure to so act must be read as a purposeful decision to reserve to the federal government jurisdiction over the tribes themselves. (*Bryan, supra,* 426 U.S. at pp. 388-390 and fn. 14 [48 L.Ed.2d at pp. 720-722]; see, generally, *Washington v. Yakima Indian Nation* (1979) 439 U.S. 463 [58 L.Ed.2d 740, 99 S.Ct. 740]; *Williams v. Lee* (1959) 358 U.S. 217 [3 L.Ed.2d 251, 79 S.Ct. 269].)[6]

## II

### EQUAL PROTECTION

■ The Longs present a variety of arguments that the congressional recognition of the sovereign immunity of the Chemehuevi Tribe amounts to an arbitrary classification based on race, and violates the equal protection guarantees of the Constitutions of the United States and the State of California. In particular it is argued that there is a

---

[4]*Daly* v. *United States* (8th Cir. 1973) 483 F.2d 700, concludes that, by implication, the Indian Civil Rights Act (25 U.S.C. § 1302) abrogated tribal sovereign immunity as such a conclusion is required in order to effect that act. (At p. 705.) Within this context, *Daly* was followed in *Williams* v. *Sisseton-Wahpeton Sioux Tribal Council* (N.D.S.D. 1975) 387 F.Supp. 1194, 1198. That act, not pertinent here, imposes restraints on the powers of tribal self-government in order to preserve constitutional protections for individual tribal members. Nevertheless, the act is not an abolition of the long recognized sovereignty of the tribes. (*Crowe* v. *Eastern Band of Cherokee Indians, Inc.* (4th Cir. 1974) 506 F.2d 1231, 1234-1237.)

[5]Subdivision (b) of 28 United States Code section 1360, the terms of which have no substantive relevance to the matter before us, recognizes certain protections for both the "Indian" and the "Indian tribe." The recognition of the "tribe" within the statute as distinguished from the "Indian" leaves little doubt that omission of the tribal reference in subdivision (a) of the statute was anything other than intentional.

[6]Longs mistakenly rely on various California statutes. They fail to recognize that Congress, not the California Legislature, is the entity that controls the extent to which states may exercise jurisdiction over Indian tribes. This exclusive power is derived from article I, section 8 of the United States Constitution. (See: *Morton* v. *Mancari* (1974) 417 U.S. 535, 551-552 [41 L.Ed.2d 290, 301, 94 S.Ct. 2474].)

clear equal protection violation where sovereign immunity protects a tribe conducting a commercial enterprise open to the public. Longs complain they are denied redress for a wrong simply because of "a discriminatory, arbitrary classification based upon race" or nationality. The Longs complain they are discriminated against because they are Caucasians. They contend that all businesses, Indian and non-Indian, must be treated alike.

Individual Indians may be sued by Indian and non-Indian alike. (28 U.S.C. § 1360(a).) Nontribal Indian businesses may be sued for their tortious conduct. (*Id.*) Individual Indians similarly situated to the Longs also face the same sovereign immunity bar. (*Iron Crow* v. *Oglala Sioux Tribe of Pine Ridge Res.* (8th Cir. 1956) 231 F.2d 89; cf. fn. 4, *supra*, where the Indian Civil Rights Act is involved.)

No case has been cited to us which holds, or even suggests, that the tribe is a racial classification. In fact, Longs avoid all consideration in the cases of the historical background against which most cases involving the tribes are set and which demonstrates the political, not racial, considerations involved. (*Morton, supra*, 417 U.S. at p. 554, fn. 24 [41 L.Ed.2d at p. 302].) "It would seem clear that the Constitution, as construed by the Supreme Court, acknowledges the paramount authority of the United States with regard to Indian tribes but recognizes the existence of Indian tribes as *quasi* sovereign entities possessing all the inherent rights of sovereignty excepting where restrictions have been placed thereon by the United States itself." (*Iron Crow, supra*, at p. 92.)

In rejecting a Fifth Amendment attack on the policy of Indian employment and advancement preferences in the Bureau of Indian Affairs, the Supreme Court said: "Literally every piece of legislation dealing with Indian tribes and reservations...single out for special treatment a constituency of tribal Indians living on or near reservations. If these laws, derived from historical relationships and explicitly designed to help only Indians, were deemed invidious racial discrimination, an entire Title of the United States Code (25 U.S.C.) would be effectively erased and the solemn commitment of the Government toward Indians would be jeopardized." (*Morton, supra*, 417 U.S. at p. 552 [41 L.Ed.2d at p. 302].)

The cases cited by Longs derived from other areas of the law where Indians and Indian tribes were not involved, provide no aid in resolu-

tion. Furthermore, Longs' view contains a misunderstanding in assuming that Indians as individuals possess sovereign immunity. The few Indian cases cited by Longs simply do not lend support to their position. Thus, the appellate burden has not been met. Moreover, the obvious conclusion from the many Indian cases cited above (which Longs do not directly confront in any meaningful or accurate way) is that this country's policies toward the Indian nations demonstrates that the sovereign immunity of the Indian tribes is based on political, rather than racial, considerations and does not violate equal protection under either state or federal Constitutions. This immunity bars suits against the tribe by tribal members as well as nonmembers, and protection does not extend to individual Indians. The immunity of the Chemehuevi Tribe, reflecting legitimate federal policy, is distinctly nonracial in purpose and effect. There has been no racial discrimination here.

## III

### WAIVER

Somewhat gratuitously we consider the concept of waiving sovereign immunity. Longs did not plead a waiver of sovereign immunity nor did they argue it below nor have they presented a waiver argument on appeal. We consider it only because Longs have placed reliance on *Parker, supra*, 451 F.Supp. 1127, and have cited *Loncassion v. Leekity* (D.N.M. 1971) 334 F.Supp. 370 but for the wrong propositions. Both are waiver cases.[7]

In *Parker*, plaintiff, after crashing into a snow berm at an airport allegedly owned by the Metlakatla Indian Community, brought a negligence action against the community. The court there found that if the Indian community had owned and operated the airport as a governmental organization (the tribe), plaintiff's suit would have been precluded by the community's sovereign immunity. (*Parker, supra*, 451 F.Supp. at p. 1131.) If, however, the Metlakatla Tribe operated the airport as a corporate entity organized under section 17 of the Indian Reorganization Act (25 U.S.C. § 477) the community was able to waive its

---

[7]We assume, without deciding, that a tribe may unilaterally waive its sovereign immunity (see: *U.S. Fidelity & Guaranty Co., supra*, 309 U.S. 506). The *Parker* decision did not conclusively find that a waiver existed and *Loncassion* was premised upon a waiver agreement between the tribe and the Bureau of Indian Affairs.

inherent immunity.[8] (*Parker, supra*, at p. 1131.) Holding that any such waiver must be "clear and explicit," the court found a sufficiently clear consent in the "sue and be sued" clause of the corporate charter.[9]

In the present case, there is no allegation of a waiver similar to that found in *Parker*. Appellants do not attempt to distinguish the tribe's immunity as a proprietor from its immunity as a government. For example, there is some authority that suits may be maintained against a proprietary corporation established by a sovereign government where the incident in question does not involve the exercise of governmental powers. (*Schippa v. West Virginia Liquor Control Com'n*. (1948) 53 S.E.2d 609 [611, 9 A.L.R.2d 1284].) Nor does appellant allege that the Chemehuevi Tribe gained an economic advantage by grace of its sovereign status.[10] ▆ The mere existence of liability insurance is not enough by itself to establish a waiver. (*Loncassion, supra*, 334 F.Supp. at p. 373; *Atkinson, supra*, 569 P.2d at pp. 168-169.)[11] Lacking both a plausible theory of waiver and some indication of waiver, we cannot find that the Chemehuevi Tribe waived its privilege of sovereign immunity.

Perhaps the reason waiver was not directly addressed here or pleaded below is because there are no facts supporting waiver. Regardless, no waiver is shown, there is no equal protection violation and the doctrine of sovereign immunity applies in the case before us.

Affirmed.

The petition of plaintiffs and appellants for a hearing by the Supreme Court was denied March 18, 1981.

---

[8]Longs do not allege that the Chemehuevi Tribe operated the Havasu marina as a corporation organized under 25 United States Code section 477. Even if alleged, "the mere fact of corporate activity or existence does not waive the sovereign immunity enjoyed by the [tribe]." (*Parker, supra*, at p. 1136.)

[9]"Sue and be sued clauses have long been considered waivers of the sovereign immunity by the United States [citations]." (*Parker, supra*, at p. 1136.)

[10]See *Washington v. Yakima Indian Nation, supra*, 439 U.S. 463 (selling cigarettes to nontribal public without levying state sales tax).

[11]The complaint does not allege the tribe was covered by liability insurance. However, at page 19 of Longs' points and authorities in opposition to the demurrer in the trial court, there is a statement as follows: "Upon information and belief, the plaintiffs allege that the defendants are covered by liability insurance."