[No. E022141. Fourth Dist., Div. Two. Apr. 21, 1999.]

RAY C. TRUDGEON, Plaintiff and Appellant, v.
FANTASY SPRINGS CASINO et al., Defendants and Respondents.

**COUNSEL**

Sergio A. Retamal for Plaintiff and Appellant.

Masry & Vititoe and Nancy Seidler Eichler for Defendants and Respondents.

**OPINION**

**RICHLI, Acting P. J.**—Plaintiff appeals from summary judgment for defendants in this action for personal injuries sustained at an Indian gaming casino. He principally contends the court improperly extended the Indian tribe's

sovereign immunity to a tribal corporation formed to operate the casino. We conclude the purpose and activities of the corporation were so closely related to those of the tribe that the corporation must be considered an extension of the tribe for immunity purposes. Accordingly, we affirm the lower court.

## I

### FACTUAL AND PROCEDURAL BACKGROUND

The Cabazon Band of Mission Indians (the Tribe) is a federally recognized Indian tribe. Defendant Cabazon Bingo, Inc. (Cabazon Bingo) is a corporation organized by the Tribe which operates Fantasy Springs Casino (Fantasy Springs), a gaming and entertainment complex located on tribal land. Plaintiff and his wife visited Fantasy Springs on or about September 17, 1995, to eat supper and play bingo. At the time, plaintiff was 66 years old.

As the couple left the casino to go to their car after the bingo game, a fight broke out among other patrons. Although plaintiff was not a participant in the fight, he was knocked off his feet by the fighters, breaking his hip and shattering his elbow.

Plaintiff filed the present action in April 1996 against Fantasy Springs, Cabazon Bingo, and Does 1 through 50. Plaintiff did not sue the Tribe itself. The complaint alleged defendants knew or should have known that numerous prior assaults and crimes had occurred in the casino area, but failed to provide reasonable protection to business visitors from the criminal acts of third persons.

In January 1997, defendants moved for summary judgment on the ground the action was barred by sovereign immunity. In June 1997, the court granted defendants' motion and, in November 1997, entered judgment for defendants.

## II

### DISCUSSION

A. *Tribal Sovereign Immunity*

■ The federal government has "plenary and exclusive power" to deal with Indian tribes. (*Bryan* v. *Itasca County* (1976) 426 U.S. 373, 376, fn. 2 [96 S.Ct. 2102, 2105, 48 L.Ed.2d 710].) Under federal case law, "Indian

tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." (*Santa Clara Pueblo* v. *Martinez* (1978) 436 U.S. 49, 58 [98 S.Ct. 1670, 1677, 56 L.Ed.2d 106].) Thus, "[a]s a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." (*Kiowa Tribe of Okla.* v. *Manufacturing Technologies, Inc.* (1998) 523 U.S. 751, 754 [118 S.Ct. 1700, 1702, 140 L.Ed.2d 981].) Any such authorization or waiver " ' "cannot be implied but must be unequivocally expressed." ' " (*Santa Clara Pueblo, supra,* at p. 58 [98 S.Ct. at p. 1677]; accord, *Middletown Rancheria* v. *Workers' Comp. Appeals Bd.* (1998) 60 Cal.App.4th 1340, 1347 [71 Cal.Rptr.2d 105].) And since it emanates from federal law, tribal immunity "is not subject to diminution by the States." (*Kiowa Tribe of Okla., supra,* 523 U.S. at p. 756 [118 S.Ct. at p. 1703].)

Plaintiff does not dispute that the Tribe itself enjoys sovereign immunity. He contends, however, that the lower court improperly extended immunity to Cabazon Bingo and to the individual officers and agents of the Tribe who operated the casino. We will consider in turn the application of the Tribe's immunity to Cabazon Bingo and to the officers and agents.

### B. *Liability of Cabazon Bingo*

Cabazon Bingo is a for-profit corporation formed by the Tribe under tribal law to conduct bingo gaming enterprises on tribal land. Plaintiff argues that, because Cabazon Bingo is a proprietary corporation formed for the purpose of obtaining an economic advantage and is not involved in the exercise of the Tribe's governmental powers, it is not covered by the Tribe's sovereign immunity.[1]

■ It appears to be settled that a *tribe's* sovereign immunity is not limited to governmental activities, but extends to commercial activities as well, and that the immunity applies to tort claims. In *Kiowa Tribe of Okla.* v. *Manufacturing Technologies, Inc., supra,* 523 U.S. 751, the United States Supreme Court held sovereign immunity barred a suit against a tribe on a promissory note used to finance a tribal entity's purchase of stock in an outside corporation. The court expressly declined to confine immunity to noncommercial activities, noting it had not done so in the past and concluding that any such limitation should come from Congress. (523 U.S. at pp. 755-758 [118 S.Ct. at pp. 1703-1705].) It stated, "Tribes enjoy immunity from suits on contracts, whether those contracts involve governmental or

---

[1]Plaintiff does not separately address the immunity of Fantasy Springs, which he also named as a defendant, but our reasoning and conclusion with respect to Cabazon Bingo's immunity apply equally to Fantasy Springs to the extent it may be separately suable.

commercial activities and whether they were made on or off a reservation." (523 U.S. at p. 760 [118 S.Ct. at p. 1705].) Previous decisions of other courts similarly recognize immunity by tribes against actions arising from purely commercial activity. (See, e.g., *Sac and Fox Nation* v. *Hanson* (10th Cir. 1995) 47 F.3d 1061, 1064-1065 [failure to pay employees of tribal manufacturing plants]; *Maryland Cas. Co.* v. *Citizens Nat. Bank of West Hollywood* (5th Cir. 1966) 361 F.2d 517, 521-522 [claim on tribe's construction surety bond]; *Elliott* v. *Capital Intern. Bank & Trust, Ltd.* (E.D.Tex. 1994) 870 F.Supp. 733, 735 [claim involving bank chartered and owned by tribe].)

Although *Kiowa Tribe of Okla.* v. *Manufacturing Technologies, Inc., supra*, 523 U.S. 751, involved a contract claim, the dissenting opinion, in suggesting immunity would be unjust to tort victims, noted that ". . . nothing in the Court's reasoning limits the rule to lawsuits arising out of voluntary contractual relationships." (523 U.S. at p. 766 [118 S.Ct. at p. 1708] (dis. opn. of Stevens, J.).) Other courts have recognized immunity against tort claims arising from tribal commercial activities. In *Long* v. *Chemehuevi Indian Reservation* (1981) 115 Cal.App.3d 853 [171 Cal.Rptr. 733], for example, this court held that sovereign immunity barred a personal injury suit arising from a boating accident at a marina located on an Indian reservation and owned and operated by the tribe as a profit-seeking operation. (*Id.*, at p. 858; see also *Morgan* v. *Colorado River Indian Tribe* (1968) 103 Ariz. 425, 428 [443 P.2d 421, 424] [immunity barred suit for accident at marina operated as tribal enterprise outside reservation boundaries]; *Seminole Tribe of Florida* v. *Houghtaling* (Fla.Dist.Ct.App. 1991) 589 So.2d 1030, 1032 [personal injury suit by customer of tribal bingo hall].)

These decisions do not directly address the issue before us, since they involved claims against the tribes themselves rather than against a separate business entity organized by the tribe as in the present case. We have not found any California authority addressing the issue whether immunity against claims arising from commercial activity should be extended to such entities. In *Long* v. *Chemehuevi Indian Reservation, supra*, 115 Cal.App.3d 853, we noted the existence of "some authority that suits may be maintained against a proprietary corporation established by a sovereign government where the incident in question does not involve the exercise of governmental powers." (*Id.*, at p. 861.) However, we did not address whether immunity should apply in such a case, because the plaintiffs in *Long* did not attempt "to distinguish the tribe's immunity as a proprietor from its immunity as a government." (*Ibid.*)

Other jurisdictions which have considered whether sovereign immunity applies to tribal business entities have reached varying conclusions. A few

decisions have simply asserted that " 'an action against a tribal enterprise is, in essence, an action against the tribe itself.' " (*Barker* v. *Menominee Nation Casino* (E.D.Wis. 1995) 897 F.Supp. 389, 393, quoting *Local IV-302 Int. Woodw.* v. *Menominee Tribal E.* (E.D.Wis. 1984) 595 F.Supp. 859, 862.) However, most courts have rejected, implicitly if not explicitly, the suggestion that courts should "confer tribal immunity on every entity established by an Indian tribe, no matter what its purposes or activities might have been." (*Dixon* v. *Picopa Const. Co.* (1989) 160 Ariz. 251, 255, fn. 7 [772 P.2d 1104, 1108].) These decisions hold that whether tribal immunity should be extended to a tribal business entity should depend on the degree to which the tribe and entity are related in terms of such factors as purpose and organizational structure. Applying that standard, courts have reached various conclusions on the immunity issue, depending on the facts. (See, e.g., *Gavle* v. *Little Six, Inc.* (Minn. 1996) 555 N.W.2d 284, 294-296 [extending immunity to tribal corporation which owned gambling casino]; *White Mountain Apache Indian Tribe* v. *Shelley* (1971) 107 Ariz. 4, 6-7 [480 P.2d 654, 656-657] [extending immunity to unincorporated tribal timber company]; *S. Unique* v. *Gila River Pima-Maricopa* (1983) 138 Ariz. 378, 381-385 [674 P.2d 1376, 1379-1383] [unincorporated tribal farming business immune but waived immunity]; *Padilla* v. *Pueblo of Acoma* (1988) 107 N.M. 174, 179-180 [754 P.2d 845, 850-851] [unincorporated tribal construction firm not immune from liability for breach of contract arising from off-reservation activities]; *Dixon* v. *Picopa Const. Co.*, *supra*, 160 Ariz. 251, 256-259 [772 P.2d 1104, 1109-1112] [construction company incorporated by tribe not immune for off-reservation tort].)

Although courts have looked to different factors in deciding whether to extend tribal immunity to business enterprises, the principal criteria were recently summarized by the Supreme Court of Minnesota in *Gavle* v. *Little Six, Inc.*, *supra*, 555 N.W.2d 284 (hereafter *Gavle*). In *Gavle* a casino employee sued the tribal corporation which owned the casino for sexual harassment, pregnancy and racial discrimination, civil rights violations and other torts arising from her employment. The court identified the relevant criteria in addressing the immunity issue as follows:

"1) whether the business entity is organized for a purpose that is governmental in nature, rather than commercial;

"2) whether the tribe and the business entity are closely linked in governing structure and other characteristics; and

"3) whether federal policies intended to promote Indian tribal autonomy are furthered by the extension of immunity to the business entity." (*Gavle*, *supra*, 555 N.W.2d, at p. 294.)

Applying those criteria to the case before it, the court concluded the corporation was immune. First, the corporation had been created for the specific purpose of improving the financial and general welfare of the tribe. Second, the corporation was owned wholly by the tribe as a governmental unit, rather than being organized under the laws of the state. The board of directors had to include at least three members of the tribal business council, and a majority of the directors had to be tribal members. Directors could be removed by a tribal court proceeding commenced by the tribal members. Finally, federal policies supported Indian gaming as a means of promoting tribal welfare. (*Gavle, supra,* 555 N.W.2d at pp. 294-295.)

■ We find *Gavle*'s three-factor analysis to be an accurate summation of the relevant case law. Moreover, the analysis is particularly relevant here since *Gavle*, like this case, involved a tort action against a tribal corporation which operated a gambling casino. We therefore will use that analysis in considering whether Cabazon Bingo is immune.

### 1. *Purpose for Which the Tribal Business Is Organized*

In the wake of *Kiowa Tribe of Okla.* v. *Manufacturing Technologies, Inc., supra,* 523 U.S. 751, it might be questioned whether the first criterion identified by the court in *Gavle*—whether the purpose of the tribal business entity is governmental or commercial—is still relevant. As noted *ante,* the court in *Kiowa* held that tribes are immune from contract claims "whether those contracts involve governmental or commercial activities . . . ." (523 U.S. at p. 760 [118 S.Ct. at p. 1705].) If a tribe enjoys immunity for its commercial as well as its governmental activities, then arguably the fact it creates a business entity for a purely commercial purpose should not matter in determining the immunity of the entity.

In another sense, however, the purpose for which the entity is created may remain relevant even after *Kiowa*. Because *Kiowa* involved liability of a tribe and not a tribal business entity, the court did not consider the possible relevance of the governmental/commercial distinction in determining the liability of tribal entities. It is clear from the cases involving tribal entities that such entities have no inherent immunity of their own. Instead, they enjoy immunity only to the extent the immunity of the tribe, which does have inherent immunity, is extended to them. In view of that fact, it is possible to imagine situations in which a tribal entity may engage in activities which are so far removed from tribal interests that it no longer can legitimately be seen as an extension of the tribe itself. Such an entity arguably should not be immune, notwithstanding the fact it is organized and owned by the tribe.

Assuming, without deciding, that the purpose for which the entity is organized remains a viable consideration, we conclude it militates in favor of immunity in this case. The Tribe formed Cabazon Bingo in 1983 pursuant to Tribal Ordinance No. 4.1, which provides for the formation of a tribal corporation for reservation enterprises. Plaintiff notes the ordinance does not state a corporation formed pursuant to it must have the objective of promoting general tribal or economic development. However, the 1983 resolution by which the Tribe formed Cabazon Bingo stated: "The Cabazon Band, *in its quest for self-determination*, finds it necessary to form a tribal corporation for reservation enterprises relating to bingo . . . ." (Italics added.)

The United States Supreme Court has recognized the importance of gaming in promoting the self-determination of the Tribe. In *California* v. *Cabazon Band of Mission Indians* (1987) 480 U.S. 202 [107 S.Ct. 1083, 94 L.Ed.2d 244], the court observed: "The Cabazon and Morongo Reservations contain no natural resources which can be exploited. The tribal games at present provide the sole source of revenues for the operation of the tribal governments and the provision of tribal services. They are also the major sources of employment on the reservations. Self-determination and economic development are not within reach if the Tribes cannot raise revenues and provide employment for their members." (480 U.S. at pp. 218-219 [107 S.Ct. at p. 1093].)

Additionally, the Indian Gaming Regulatory Act (25 U.S.C. §§ 2701-2721), which governs all Indian gaming, requires that revenues from gaming be used only "(i) to fund tribal government operations or programs; [¶] (ii) to provide for the general welfare of the Indian tribe and its members; [¶] (iii) to promote tribal economic development; [¶] (iv) to donate to charitable organizations; or [¶] (v) to help fund operations of local government agencies . . . ." (25 U.S.C. § 2710(b)(2)(B).) Here, the parties stipulated that Fantasy Springs operates pursuant to this provision of that act.

These authorities recognize "the unique role that Indian gaming serves in the economic life of here-to-fore impoverished Indian communities across this country." (*Gavle, supra*, 555 N.W.2d at p. 295.) That fact, along with the specific reference to the self-determination of the Tribe in the resolution creating Cabazon Bingo, supports the conclusion that the underlying purpose of Cabazon Bingo is governmental in nature notwithstanding its for-profit status. Cases which have not extended immunity to tribal enterprises typically have involved enterprises formed "solely for business purposes and without any declared objective of promoting the [tribe's] general tribal or economic development . . . ." (*Dixon* v. *Picopa Const. Co., supra*, 160 Ariz. 251, 257 [772 P.2d 1104, 1109].) That is not the situation here. We therefore conclude the first *Gavle* criterion supports immunity.

## 2. *Degree of Tribal Control Over the Enterprise*

The second factor articulated in *Gavle*—whether the tribe and the business entity are closely linked in governing structure and other characteristics—essentially examines the extent to which the tribe controls the composition and operations of the business entity. In *Gavle*, the court in finding immunity noted the facts that the casino corporation was organized under tribal law; the corporation was wholly owned by the tribe; the governing board included at least three members of the tribal business council; a majority of the board had to be tribal members; and board members could be removed by a vote of the tribe. (555 N.W.2d 284, 295; see also *White Mountain Apache Indian Tribe* v. *Shelley, supra*, 107 Ariz. 4, 6 [480 P.2d 654, 656] [tribal council selected majority of board members of tribal timber company].) The facts are analogous here.

In connection with the summary judgment motion, the parties stipulated to these facts: The shareholders of Cabazon Bingo consist of members of the Cabazon General Council, which consists of all tribal members over eighteen years old; the general council elects six tribal members to the Cabazon Business Committee every four years; and the business committee functions as the board of directors of Cabazon Bingo and appoints its officers. Further, Cabazon Bingo's articles of incorporation provide that directors may be removed by affirmative vote of a majority of the outstanding shareholders, i.e., the members of the Tribe. It is thus apparent that the Tribe, through its members and their elected officials, directly oversees the operations of Cabazon Bingo. (Cf. *Dixon* v. *Picopa Const. Co., supra*, 160 Ariz. 251, 256 [772 P.2d 1104, 1109] [no immunity where tribal corporation "ha[d] a board of directors, separate from the tribal government, which exercise[d] full managerial control over the corporation"].)

Plaintiff notes that the articles of incorporation of Cabazon Bingo do not require that its directors or officers be tribal members. However, while no such requirement is stated in the articles, it appears as a practical matter that the directors are members of the Tribe, since, as noted *ante*, the business committee—to which six tribal members are elected—functions as the board of directors. And while there is no indication that the officers of Cabazon Bingo must be tribal members, ". . . control of a corporation need not mean control of business minutiae; the tribe can be enmeshed in the direction and control of the business without being involved in the actual management." (*Gavle, supra*, 555 N.W.2d 284, 295.) We therefore conclude the second *Gavle* criterion also supports immunity.

### 3. *Furtherance of Federal Policies Intended to Promote Tribal Autonomy*

The final factor identified in *Gavle*—whether federal policies intended to promote Indian tribal autonomy would be furthered by the extension of immunity—also militates in favor of immunity. As the court in *Gavle* noted, the Indian Gaming Regulatory Act recognizes gaming "as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments . . . ." (25 U.S.C. § 2702(1).) Similarly, as previously discussed, the United States Supreme Court has acknowledged the significance of gaming in promoting the self-determination of the Tribe. (*California* v. *Cabazon Band of Mission Indians, supra*, 480 U.S. 202, 218-219 [107 S.Ct. 1083, 1093-1094].)

For these reasons, we conclude the lower court properly extended immunity to Cabazon Bingo. We briefly discuss the authorities on which plaintiff bases his contrary view.

First, plaintiff misrepresents the facts and holding of *Inland Casino Corp.* v. *Superior Court* (1992) 8 Cal.App.4th 770 [10 Cal.Rptr.2d 497]. Contrary to plaintiff's assertion, the defendant company in *Inland* was not an "Indian corporation." In fact, as the court pointed out, the company was an outside, "non-Indian party" retained by the tribe to operate the tribal casino. (*Id.*, at pp. 774, fn. 2, 776.) Thus, *Inland* involved no issue of tribal immunity and has no relevance here.

*Parker Drilling Co.* v. *Metlakatla Indian Community* (D. Alaska 1978) 451 F.Supp. 1127 also fails to support plaintiff's position. The court in *Parker* merely ruled that *if* the defendant tribe operated an airport in its capacity as an "Indian corporation" organized pursuant to section 17 of the Indian Reorganization Act (25 U.S.C. § 477) rather than in its capacity as a "governmental organization" under section 16 of that act (25 U.S.C. § 476)—a question the court could not decide for lack of an adequate record—the tribe could be sued for an accident occurring at the airport. (451 F.Supp. at p. 1141.) Here, the parties stipulated that the Tribe is not subject to the Indian Reorganization Act, including sections 16 and 17.[2] Additionally, as discussed *ante*, after *Kiowa Tribe of Oklahoma* v. *Manufacturing Technologies, Inc., supra*, 523 U.S. 751, the governmental/commercial distinction may be of questionable vitality in any event.

---

[2] A tribe need not be organized under the Indian Reorganization Act in order to engage in economic activities. (Vetter, *Doing Business with Indians and the Three "S"es: Secretarial Approval, Sovereign Immunity, and Subject Matter Jurisdiction* (1994) 36 Ariz. L.Rev. 169, 175, fn. 36.)

■ Finally, plaintiff notes that 28 United States Code section 1360(a) grants certain states, including California, jurisdiction over civil causes of action arising in Indian country to which Indians are parties. It is settled, however, that section 1360 confers jurisdiction only over individual Indians, not over Indian tribes themselves. (*Bryan* v. *Itasca County, supra,* 426 U.S. 373, 389 [96 S.Ct. 2102, 2111]; *Middletown Rancheria* v. *Workers' Comp. Appeals Bd., supra,* 60 Cal.App.4th 1340, 1351.) Accordingly, jurisdiction under section 1360 "does not extend to tribes *or tribal entities.*" (*Gavle, supra,* 555 N.W.2d 284, 289, italics added.) More fundamentally, even assuming section 1360 conferred jurisdiction over Cabazon Bingo, that fact would not overcome the defense of sovereign immunity at issue in this case. "The question of the right to sue (immunity) is distinct from the question of jurisdiction." (Vetter, *Doing Business with Indians and the Three "S"es: Secretarial Approval, Sovereign Immunity, and Subject Matter Jurisdiction, supra,* 36 Ariz. L.Rev. 169, 186.)

### C. Liability of Tribal Officers and Agents

■ The remaining issue is whether the court erred in ruling the Tribe's immunity extended to individual officers and agents of the Tribe who operated the casino. The complaint named as defendants 50 "Does," and alleged generally that each fictitious defendant was negligently responsible in some manner for plaintiff's injuries. Although it appears no individual defendant was before the court when it ruled,[3] plaintiff nonetheless requested a ruling on whether tribal immunity applied to officers and agents, and the court stated immunity would apply to individuals "working within the scope of their employment."

■ It is settled that " . . . tribal immunity extends to individual tribal officials acting in their representative capacity and within the scope of their authority." (*Hardin* v. *White Mountain Apache Tribe* (9th Cir. 1985) 779 F.2d 476, 479.) This immunity applies to officials sued in their individual capacities. (*Id.* at pp. 478-479; *Romanella* v. *Hayward* (D.Conn. 1996) 933 F.Supp. 163, 167-168.) Further, at least in our federal circuit, an official need not be a member of the tribe in order to share in its sovereign immunity. (*Baugus* v. *Brunson* (E.D.Cal. 1995) 890 F.Supp. 908, 911.)[4] And immunity has been extended to officers of a tribal business entity as well as to officers of the tribe itself. (*White Mountain Apache Indian Tribe* v. *Shelley, supra,* 107 Ariz. 4, 8 [480 P.2d 654, 658].)

---

[3]Before the summary judgment motion was heard, plaintiff filed an amendment to the complaint to substitute Mark Nichols, the chief executive officer of the Tribe and Fantasy Springs, in place of Doe 1. However, it appears the amendment was not before the court when it granted summary judgment.

[4]The record does not reflect whether Mark Nichols is a member of the Tribe.

As plaintiff notes, an agent of an immune sovereign may be held liable for an act which exceeds his or her authority. (*Boisclair* v. *Superior Court* (1990) 51 Cal.3d 1140, 1157 [276 Cal.Rptr. 62, 801 P.2d 305].) But the commission of a tort is not per se an act in excess of authority. " '[I]f the actions of an officer do not conflict with the terms of his valid statutory authority, then they are actions of the sovereign, whether or not they are tortious under general law . . . .' " (*Ibid.*) Where the plaintiff alleges no viable claim that tribal officials acted outside their authority, immunity applies. (*Imperial Granite Co.* v. *Pala Band of Mission Indians* (9th Cir. 1991) 940 F.2d 1269, 1271.)

Here, the complaint alleged that at all times "each of the Defendants was the agent and employee of each of the remaining Defendants and in doing the things hereinafter alleged, *was acting within the scope of such agency and employment.*" (Italics added.) There was no allegation from which it could be inferred that any individual exceeded his or her authority as an agent of the Tribe. The lower court was justified in concluding plaintiff had not asserted facts sufficient to overcome immunity against any potential individual defendant.

Further, it is evident that plaintiff *could not* make such an allegation based on the facts set forth in the complaint. Plaintiff's theory of negligence was that the defendants should have provided adequate security to protect patrons in the casino area. In an analogous case, it was recently held that individual tribal members were immune from a negligence suit brought by an employee who slipped and fell in a casino parking lot. (*Romanella* v. *Hayward, supra,* 933 F.Supp. 163.) The court reasoned that, because the tribal members were responsible for maintaining the parking lot, the negligence claims against them "directly relate[d] to their performance of their official duties." (*Id.,* at p. 168.)

Here, similarly, control and maintenance of the casino area manifestly were related to the official duties of the individuals entrusted with the operation of the casino. Any failure to provide adequate security therefore was an act within the official authority of those individuals and, as such, was subject to immunity.

III

CONCLUSION

For these reasons, we agree with the lower court that the present suit is barred by sovereign immunity. We acknowledge, as did the United States

Supreme Court in *Kiowa Tribe of Okla.* v. *Manufacturing Technologies, Inc.*, *supra*, 523 U.S. 751, that, in the context of tribal business enterprises, ". . . immunity can harm those who are unaware that they are dealing with a tribe, who do not know of tribal immunity, or who have no choice in the matter, as in the case of tort victims." (*Id.*, at p. 758 [118 S.Ct. at p. 1704].) At the same time, we note our disposition does not leave plaintiff completely without recourse. The record shows the Tribe has established a reservation court which has civil jurisdiction over all disputes within reservation boundaries, and defendants assert that court has sole jurisdiction over this matter. We presume, in view of the Tribe's obvious incentive to maintain good relations with its business clientele, that the tribal court can and will fairly adjudicate the matter.

IV

DISPOSITION

The judgment is affirmed. Costs to respondents.

Ward J., and Gaut J., concurred.

Appellant's petition for review by the Supreme Court was denied July 28, 1999. Mosk, J., and Brown, J., were of the opinion that the petition should be granted.