[No. C036723. Third Dist. Apr. 6, 2001.]

REDDING RANCHERIA, Petitioner, v.
THE SUPERIOR COURT OF SHASTA COUNTY, Respondent;
SUZANNE HANSARD, Real Party in Interest.

## COUNSEL

Rapport & Marston and David J. Rapport for Petitioner.

No appearance for Respondent.

Dugan, Barr & Associates, Douglas Mudford and J. Michael Favor for Real Party in Interest.

## OPINION

**MORRISON, J.**—Here we hold an Indian tribe and its commercial entity are immune from an ordinary tort suit arising outside of Indian country.

Suzanne Hansard (plaintiff) sued Win River Casino and several Does in Shasta County Superior Court. She alleged she was working as a bartender at a Redding hotel, attending to a party "for defendant WIN RIVER and its employees, who had booked one of the facility's banquet rooms[.]" "[O]ne or more" of the employees threw gifts into the crowd, and a package struck her, causing injury. She framed the complaint in terms of negligence, assault and battery.

Redding Rancheria (Tribe) moved to quash service of summons (Code Civ. Proc., § 418.10, subd. (a)(1)), alleging Win River Casino is "an economic enterprise of the Redding Rancheria, a federally recognized Indian tribe," and, hence, immune from a state tort suit. The Tribe also alleged: "Plaintiff failed to exhaust her tribal administrative remedies, which, under tribal law, is a prerequisite to filing suit." The facts regarding the Tribe's status, tribal laws, and the structure of Win River Casino as a tribal enterprise were supported by a declaration of the Tribe's attorney. In part, she declared: "The Tribe owns and operates the Win River Casino which is located within the exterior boundaries of the Tribe's Reservation in Shasta County. All persons who work in the casino enterprise are tribal employees." Although plaintiff had submitted her claim to the tribal council pursuant to a tribal claims ordinance, she declined to allow the council to adjudicate her claim; according to an annexed letter by her lawyer, plaintiff believed the fact all Tribe members had an economic interest in the casino would render the proceedings unfair.

In opposition, plaintiff filed a declaration explaining she was just doing her job at the hotel, had no knowledge of any tribal immunity, and had never consented "to waive any of my rights as a citizen of [the] State of California or the United States of America." Had she understood the immunity now claimed by the Tribe, for conduct occurring off tribal lands, "I very likely would have declined to work the party." She presented no evidence to contest the casino's status as a tribal entity, nor that she had submitted a claim to the Tribe.

At the hearing, the Tribe urged all of the legal points raised by plaintiff's opposition had been rejected by the United States Supreme Court decision, *Kiowa Tribe of Okla. v. Manufacturing Technologies, Inc.* (1998) 523 U.S. 751 [118 S.Ct. 1700, 140 L.Ed.2d 981] (*Kiowa*). The trial court denied the

motion, stating in part: "I can see that if they were running a business off reservation, but I can't see it here where it's a tort action."

A formal order denying the motion was served on the Tribe; the Tribe responded by filing a petition for writ of mandate. We issued an alternative writ. We now grant the Tribe's prayer for relief, for the reasons that follow.

1. An aboriginal American tribe is a sovereign nation and "As a matter of federal law, . . . is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." (*Kiowa, supra,* 523 U.S. at p. 754 [118 S.Ct. at p. 1702]; see *Great Western Casinos, Inc. v. Morongo Band of Mission Indians* (1999) 74 Cal.App.4th 1407, 1419-1420 [88 Cal.Rptr.2d 828] (*Morongo Band*).) Plaintiff does not point to any federal law which grants California jurisdiction over alleged off-reservation Indian torts. In some cases, the United States Supreme Court has looked to organic acts to determine whether Congress granted a state power to regulate off-reservation Indian conduct. (E.g., *Mescalero Apache Tribe v. Jones* (1973) 411 U.S. 145, 148-150 [93 S.Ct. 1267, 1270-1271, 36 L.Ed.2d 114, 119-120] [New Mexico may levy nondiscriminatory taxes on off-reservation Indian ski resort, based on provision of Enabling Act for New Mexico]; *Kake Village v. Egan* (1962) 369 U.S. 60 [82 S.Ct. 562, 7 L.Ed.2d 573] [considering effect of Alaska Statehood Act on tribe's right to fish].) But a state's power to regulate a tribe's conduct is not the same as a state's power to sue a tribe. (See *Oklahoma Tax Com'n v. Potawatomi Tribe* (1991) 498 U.S. 505, 511-514 [111 S.Ct. 905, 910-912, 112 L.Ed.2d 1112, 1121-1123] (*Potawatomi*) [state may impose tax on Indian cigarette sales to non-Indians, but may not sue tribe to collect tax; "There is no doubt that sovereign immunity bars the State from pursuing the most efficient remedy, but we are not persuaded that it lacks any adequate alternatives"].) In any event, we find nothing in California's organic act (Act for Admission of the State of California, 9 Stat. 452), or in any other federal law, which grants California any special power over Indian tribes. (See *Long v. Chemehuevi Indian Reservation* (1981) 115 Cal.App.3d 853 [171 Cal.Rptr. 733] (*Long*) [tribe immune from tort suit, reviewing federal law and finding no congressional waiver of immunity]; *Middletown Rancheria v. Workers' Comp. Appeals Bd.* (1998) 60 Cal.App.4th 1340 [71 Cal.Rptr.2d 105] [Workers' Compensation Appeals Board lacks jurisdiction over tribe].) Plaintiff attempts to analogize the tribal claim system with California's Tort Claims Act, but this mixes apples and oranges. (See *Long, supra,* at p. 858, fn. 6 ["Longs mistakenly rely on various California statutes. They fail to recognize that Congress, not the California Legislature, is the entity that controls the extent to which states may exercise jurisdiction over Indian tribes"].)

 █ 2. Tribal immunity applies to commercial as well as governmental activities: "Our cases allowing States to apply their substantive laws to tribal activities are not to the contrary. We have recognized that a State may have authority to tax or regulate tribal activities occurring within the State but outside Indian country. [Citations.] To say substantive state laws apply to off-reservation conduct, however, is not to say that a tribe no longer enjoys immunity from suit." (*Kiowa, supra,* 523 U.S. at p. 755 [118 S.Ct. at p. 1703] [pointing to *Potawatomi* case].) Contrary to plaintiff's view, no "tribal goal" is required to conclude a tribal activity is immunized. Nor is it necessary to determine whether, absent the immunity, a tribe's ability to self-govern would be infringed. (See *Padilla v. Pueblo of Acoma* (1988) 107 N.M. 174, 178 [754 P.2d 845, 849] (*Padilla*) ["the infringement test applies to individual Indians and is inapplicable to the exercise of state court jurisdiction over an Indian tribe that has invoked its sovereign immunity"].) *Padilla,* relied on by plaintiff, did conclude immunity for off-reservation conduct "is solely a matter of comity." (*Id.* at p. 179 [754 P.2d at p. 850], cert. den. *sub nom. Pueblo of Acoma v. Padilla* (1989) 490 U.S. 1029 [109 S.Ct. 1767, 104 L.Ed.2d 202] [White, J., dis. from denial of cert., due to conflict among state courts on this question].) Well-reasoned cases have rejected this view. (See, e.g., *Sac and Fox Nation v. Hanson* (10th Cir. 1995) 47 F.3d 1061, 1064-1065 [rejecting analogy of Indian tribe to foreign sovereign; "we do not believe that the location of the commercial activity is determinative"]; *In re Greene* (9th Cir. 1992) 980 F.2d 590, 593-597 [questioning *Padilla,* "sovereign immunity, as it existed at common law, had an extra-territorial component"; *Padilla* "should have looked at the scope of tribal immunity under federal law, rather than the extent of comity afforded under state law"]; *Morgan v. Colorado River Indian Tribe* (1968) 103 Ariz. 425 [443 P.2d 421] (*Morgan*) [tribe immune from off-reservation tort suit]. See also *Puyallup Tribe v. Washington Game Dept.* (1977) 433 U.S. 165, 172-173 [97 S.Ct. 2616, 2621-2622, 53 L.Ed.2d 667] [state could not sue tribe for off-reservation conduct, only tribal members].) The comity rationale has no further viability. (See *Kiowa, supra,* 523 U.S. at p. 760 [118 S.Ct. at p. 1705] ["Tribes enjoy immunity from suits on contracts, . . . whether they were made on or off a reservation"]; *Thompson v. Crow Tribe of Indians* (1998) 289 Mont. 358, 364 [962 P.2d 577, 581] [suit to cancel liens tribe filed with county recorder, "the fact that the Tribe's action in filing its tax liens occurred off-reservation is of no consequence as regards its defense of sovereign immunity," citing *Kiowa*].)

 3. A tribal entity is treated as the tribe for immunity purposes. (See *Ninigret Development v. Narragansett Indian* (1st Cir. 2000) 207 F.3d 21, 29 (*Ninigret Dev. Corp.*) ["The Authority, as an arm of the Tribe, enjoys the full extent of the Tribe's sovereign immunity"]; *Chance v. Coquille Indian Tribe*

(1998) 327 Or. 318, 321 [963 P.2d 638, 639].) Although plaintiff's answer argues the casino is not in legal effect an arm of the Tribe, plaintiff presented no *evidence* in the trial court to challenge the Tribe's evidence the casino was an arm of the Tribe. (Cf. *Trudgeon v. Fantasy Springs Casino* (1999) 71 Cal.App.4th 632, 637-645 [84 Cal.Rptr.2d 65] (*Trudgeon*) [analyzing factors to consider when to treat a tribal entity as, in legal effect, the tribe itself].) *Trudgeon* specifically held an Indian casino (a tribal *corporation*) was entitled to immunity because of the importance of gaming in promoting tribal self-determination, the close link between the tribe and the casino, and the existence of federal law promoting Indian gambling. (*Id.* at pp. 639-642.) Plaintiff does not analyze the facts linking the Win River Casino to the Tribe, but instead merely distinguishes the facts *of her suit against the Tribe* from the facts in other cases, by means of a statement of alleged facts about the party where she was injured. This statement of facts is unsupported by citation to the trial record or to any declaration under penalty of perjury. This is not the correct analysis of an immunity question: The casino is either an arm of the Tribe for immunity purposes or it is not, regardless of the nature of the suit.

4. Cases on state sovereign immunity (*Muskopf v. Corning Hospital Dist.* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457]) or sister state immunity (*Hall v. University of Nevada* (1972) 8 Cal.3d 522 [105 Cal.Rptr. 355, 503 P.2d 1363, 81 A.L.R.3d 1234]; *Nevada v. Hall* (1979) 440 U.S. 410 [99 S.Ct. 1182, 59 L.Ed.2d 416]), cited by plaintiff, are not relevant: "In [*Blatchford v. Native Village of Noatak* (1991) 501 U.S. 775 [111 S.Ct. 2578, 115 L.Ed.2d 686]], we distinguished state sovereign immunity from tribal sovereign immunity, as tribes were not at the Constitutional Convention. They were thus not parties to the 'mutuality of . . . concession' that 'makes the States' surrender of immunity from suit by sister States plausible.' [Citations.] ▉▉▉ So tribal immunity is a matter of federal law and is not subject to diminution by the States." (*Kiowa, supra,* 523 U.S. at p. 756 [118 S.Ct. at p. 1703]; see *In re Greene, supra,* 980 F.2d at pp. 593-595 [distinguishing state immunity from tribal immunity]; *Long, supra,* 115 Cal.App.3d at p. 857, fn. 3 ["Longs confuse the distinct doctrines of state and tribal immunity in their analysis of *Nevada v. Hall* [(1979) 440 U.S. 410 [99 S.Ct. 1182, 59 L.Ed.2d 416]]"].)

▉▉▉ 5. Tort suits are not excepted from the general immunity rule. "There are reasons to doubt the wisdom of perpetuating the doctrine. . . . Tribal enterprises now include ski resorts, gambling, and sales of cigarettes to non-Indians. [Citations.] In this economic context, immunity can harm those who are unaware that they are dealing with a tribe, who do not know of tribal immunity, or who have no choice in the matter, *as in the case of tort*

*victims.*" (*Kiowa, supra,* 523 U.S. at p. 758 [118 S.Ct. at p. 1704], italics added; see also *id.* at p. 766 [118 S.Ct. at p. 1708] (dis. opn. of Stevens, J.) ["[T]he rule is unjust. This is especially so with respect to tort victims who have no opportunity to negotiate for a waiver of sovereign immunity; yet nothing in the Court's reasoning limits the rule to lawsuits arising out of voluntary contractual relationships"]; *Trudgeon, supra,* 71 Cal.App.4th at pp. 637, 644-645 [tort suit against tribal casino barred]; *Morgan, supra,* 103 Ariz. 425 [443 P.2d 421].) Any change or limitation of the doctrine (e.g., to exclude off-reservation tort suits) must come from Congress. (See *Kiowa, supra,* 523 U.S. at pp. 758-760 [118 S.Ct. at pp. 1704-1706].)

6. The Tribe's sovereign immunity does not prevent plaintiff from suing individual Indians, and the writ petition reflects plaintiff has named three individuals formerly sued as Does. Unless those individuals can show they were tribal officials acting within the scope of their authority by throwing gifts into a crowd (assuming these named individuals actually did such an act), they will not be protected by tribal immunity. (*Morongo Band, supra,* 74 Cal.App.4th at p. 1421; *Trudgeon, supra,* 71 Cal.App.4th at pp. 643-644; 4 Witkin, Cal. Procedure (4th ed. 2000 supp.) Pleading, § 100, p. 22.) The allegations of the complaint, liberally construed, can be taken to mean these individuals acted wantonly, in derogation of any official duties, despite boilerplate allegations and legal conclusions of joint liability and ratification. (Cf. *Trudgeon, supra,* 71 Cal.App.4th at p. 644.)

7. Any unfairness here is largely a product of plaintiff's litigation tactics. Although the Tribe provides a mechanism to resolve civil suits, literally by means of a hearing before the sovereign, the tribal council, plaintiff refused to follow this procedure. (See *Morongo Band, supra,* 74 Cal.App.4th at pp. 1420-1421 [tribe waived immunity subject to specified conditions, which plaintiff failed to satisfy].) The tribal ordinance applies "to all claims for money or damages, whether based on contract, tort or other cause of action." Plaintiff's counsel's letter to the Tribe states in part: "When I first submitted a claim to the council, I understood that the purpose of the submission was to provide the council with information so that its members could understand the case in order to grant a waiver of immunity." Any such understanding arose apart from the ordinance, which states in part: "Nothing in this Chapter shall be deemed to waive the sovereign immunity of the Redding Rancheria Tribe or any of its enterprises, officers, agents, or employees." (Cf. *Ninigret Dev. Corp., supra,* 207 F.3d at pp. 29-31 ["explicit language broadly relegating dispute resolution to arbitration constitutes a waiver of tribal sovereign immunity, whereas language that is ambiguous rather than definite, cryptic rather than explicit, or precatory rather than mandatory, usually will not achieve that end"].) Counsel's letter also states in part: "The less money Ms.

Hansard gets, the better it is for the tribe. It is fundamentally unfair for her to have to submit her claim for adjudication to anyone in such a position." However, "We presume, in view of the Tribe's obvious incentive to maintain good relations with its business clientele, that the tribal court can and will fairly adjudicate the matter." (*Trudgeon, supra,* 71 Cal.App.4th at p. 645; accord, *Ninigret Dev. Corp., supra,* 207 F.3d at p. 34 ["The unsupported averment that non-Indians cannot receive a fair hearing in a tribal court flies in the teeth of both congressional policy and the Supreme Court precedents establishing the tribal exhaustion doctrine"]; *Calvello v. Yankton Sioux Tribe* (1998) 1998 S.D. 107 [584 N.W.2d 108, 116-117] [suit for wrongful termination of casino manager, "By our decision, Calvello might not be deprived of his day in court, but only his day in the court of his choice"].) Although plaintiff did not choose to interact with the Tribe and did not go into Indian country (as did the plaintiff in *Trudgeon*), we cannot assume the Tribe's claims mechanism operates unfairly. No doubt, plaintiff's employer would not re-let the banquet hall to the Tribe if its court system proved to be a sham, nor would other local businesses be eager to do business with the Tribe. Although a tribe's legal system may differ widely from the common law system, that does not mean the Tribe's system is fundamentally unfair. For example, according to plaintiff's counsel, this Tribe's system calls for a hearing before the tribal council, which has the power to render a binding decision, presumably without the onerous and lengthy jury trial procedures and appeals available in civil court. That members of the tribal council may share in tribal profits does not mean they cannot be fair when presented with a just claim.

## Disposition

Let a writ of mandate issue, commanding the trial court to vacate the order denying the Tribe's motion to quash and to enter a new order granting the motion. Plaintiff shall pay the Tribe's costs of this proceeding.

Blease, Acting P. J., and Hull, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied June 13, 2001.