[No. C045118. Third Dist. Aug. 18, 2004.]

LORENA ACKERMAN et al., Plaintiffs and Appellants, v.
TRACY EDWARDS, Individually and as Chairperson, etc., et al.,
Defendants and Respondents.

### COUNSEL

Cibula & Cibula, Franklin S. Cibula; and Michael V. Stuhff for Plaintiffs and Appellants.

Rapport & Marston and David J. Rapport for Defendants and Respondents.

### OPINION

RAYE, J.—Plaintiffs Lorena Ackerman et al. (Ackerman) claim membership in the Redding Rancheria Tribe (Rancheria), a federally recognized Indian tribe. Ackerman filed a petition for writ of mandate against defendant members of the Rancheria Tribal Council (Council) challenging a resolution adopted by the Council. The resolution set forth procedures for conducting hearings on the reconsideration of a member's enrollment in the tribe. Lorena Ackerman and her fellow plaintiffs argued the resolution violated their right to due process under the Rancheria's constitution and the Indian Civil Rights Act (ICRA).[1]

In response, the Council filed a motion to quash service of summons, a motion to dismiss, and a demurrer. The trial court granted the motion to quash, finding it lacked jurisdiction over Ackerman's claim. Ackerman appeals, arguing the trial court possesses jurisdiction under the ICRA, and the resolution, by shifting the burden of proof to Ackerman, denied Ackerman's right to due process. We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Rancheria*

The Rancheria is a federally recognized Indian tribe operating pursuant to a constitution adopted in 1987 and amended in 1989. Under the constitution, a tribal council consisting of seven elected members governs the Rancheria. The Council possesses the power to adopt an enrollment ordinance governing tribal membership.

---

[1] Indian Civil Rights Act of 1968, 82 Stat. 77, 25 U.S.C. § 1301 et seq.

Under the constitution, members of the Rancheria consist of: "a) All of the seventeen (17) original distributees listed on the plan of distribution of the Redding Rancheria, dated October 8th, 1959. [¶] b) All lineal descendents of the seventeen (17) original distributees . . . ."

The Council, in 1987, adopted the Redding Rancheria Enrollment Procedures Act (Act), which sets forth the requirements for enrollment in the Rancheria. Under the Act, the Council shall review each application for enrollment together with the recommendation of the enrollment committee and determine whether the applicant is eligible to be enrolled as a member of the Rancheria. "The person filing an application has the burden of proof of establishing to the satisfaction of the . . . Council that the applicant meets all of the requirements for tribal membership." The Council shall consider all relevant evidence regarding an applicant's eligibility, "but the relevancy, weight, and sufficiency of such evidence shall be determined by the . . . Council."

The Act requires the Council to make a written decision that includes findings of fact. The Act does not require a formal hearing. If the Council determines an applicant is not eligible, the rejected applicant can appeal to the membership of the tribe at a regular meeting of the general council.

In 1994 the Council amended the Act, adding article V, governing reconsideration of enrollment. Under article V, if the Council or enrollment committee discovers, after an application for enrollment has been approved or denied, that a member may have misrepresented or omitted facts affecting eligibility, the application shall be reconsidered in accordance with the procedure for processing an original application.

### Reconsideration at Issue

In the summer of 2002 the enrollment committee received two letters from a Rancheria elder casting doubts upon the eligibility of member Lorena Butler. The letters suggested Butler was not the daughter of Virginia Timmons, an original distributee listed on the Rancheria distribution plan.

Lorena Ackerman and her fellow plaintiffs are all members of the Foreman family, who are the children and grandchildren of Butler. The Foreman family claims membership in the Rancheria through Timmons.

The enrollment committee reviewed Butler's application for membership. The application file contained neither a birth certificate nor baptismal records establishing Timmons as Butler's mother. The enrollment committee notified the Council about the deficiencies.

On the basis of the review of the application file, the enrollment committee found that Butler might have omitted facts affecting her eligibility for enrollment in the Rancheria. Under the Act, this determination required the Council to reconsider Butler's enrollment.

Because of the size of the Foreman family and the potential impact on the Rancheria, the Council adopted resolution 014-04-01-03 (Resolution). The Resolution is titled: "Resolution of the Tribal Council of the Redding Rancheria Establishing Procedures for Conducting Hearings on a Recommendation by the Enrollment Committee to Reconsider Enrollment of a Tribal Member."

The Resolution establishes a procedure requiring a hearing officer to preside over a formal hearing on the reconsideration of eligibility. The hearing officer must be an impartial and experienced attorney. The Resolution specifies that the hearing officer preside over the hearing, questioning witnesses, ruling on issues of law, and preparing a written decision for Council consideration. Nothing in the Resolution alters the standard governing the burden of proof as set forth in the Act.

According to the Council, the resolution provides Rancheria members subject to disenrollment procedures greater procedural protections than those contained in the Act.

### The Present Action

Ackerman filed a petition for writ of mandate in the trial court against the Council members, challenging the resolution. In response, the Council filed a motion to quash service of summons, motion to dismiss, and demurrer to the petition. The Council argued the trial court lacked both personal and subject matter jurisdiction over Ackerman.

The trial court granted the Council's motion to quash service of summons based on a lack of jurisdiction. The court found the Council made a sufficient showing of entitlement to sovereign immunity.

The court, in granting the motion, quoted from *Santa Clara Pueblo v. Martinez* (1978) 436 U.S. 49 [56 L.Ed.2d 106, 98 S.Ct. 1670] (*Santa Clara Pueblo*) that "[n]othing on the face of Title 1 of the ICRA purports to subject tribes to the jurisdiction of the federal courts in civil actions for injunctive or declaratory relief." (436 U.S. at p. 59.) The trial court explained, "While the petitioners argue that this case dealt only with the federal court's jurisdiction, there is nothing in the reasoning of *Santa Clara Pueblo* that would limit its application only to federal courts. In addition, to find an exception for state

courts would be inconsistent with the rationale of the decision. Further, the reasoning of the *Santa Clara Pueblo* case makes clear that there is no private right of action created by the ICRA. The petitioners cannot establish jurisdiction pursuant to this section whether the suit is considered against the tribe or individual members."

The court also found no jurisdiction by virtue of Public Law 280 (Pub. L. No. 83-280; 28 U.S.C. § 1360), concluding *Bryan v. Itasca County* (1976) 426 U.S. 373 [48 L.Ed.2d 710, 96 S.Ct. 2102] (*Bryan*) makes clear that the purpose of Public Law 280 was not to resolve disputes that affect the tribe and its ability to govern itself. The court ruled: "This is consistent with the rule of law that a petitioner cannot avoid the application of sovereign immunity of the tribe, by suing individual members where the real effect of the suit is on the tribe."

Following entry of judgment of dismissal, Ackerman filed a timely notice of appeal.

## DISCUSSION

### I

■ We begin with a brief review of Indian tribal sovereignty. Indian tribes are distinct, independent political communities that retain their original natural rights in matters of local self-government. Although no longer possessing the full attributes of sovereignty, they remain a separate people possessing the power of regulating their internal and social relations. Indian tribes have the power to make their own substantive law in internal matters and to enforce that law in their own forums. (*Santa Clara Pueblo*, *supra*, 436 U.S. at pp. 55–56.)

■ As separate sovereigns pre-existing the United States Constitution, tribes have historically been regarded as unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority. However, Congress retains the plenary authority to limit, modify, or eliminate the powers of local self-government that tribes otherwise possess. (*Santa Clara Pueblo*, *supra*, 436 U.S. at pp. 56–58.)

■ Title 1 of the ICRA, 25 United States Code sections 1301–1303, represents an exercise of this authority. Section 1302(8) states: "No Indian tribe in exercising powers of self-government shall—[¶] . . . [¶] . . . deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law." "In 25 USC 1303 [25 USCS § 1303], the only remedial provision expressly supplied by Congress, the 'privilege of the writ of habeas corpus' is made 'available to

any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe.' " (*Santa Clara Pueblo, supra,* 436 U.S. at p. 58.)

■ Indian tribes have long been recognized as possessing the common law immunity from suit traditionally enjoyed by sovereign powers. This immunity is subject to the superior and plenary control of Congress. However, absent congressional authorization, the tribes are exempt from suit. (*Santa Clara Pueblo, supra,* 436 U.S. at p. 58.)

## II

Both parties urge application of the Supreme Court decision in *Santa Clara Pueblo,* but to very different ends. In *Santa Clara Pueblo,* the respondent, a female member of the Santa Clara Pueblo tribe, brought an action for declaratory and injunctive relief against enforcement of a tribal ordinance denying membership to children of female members who marry outside the tribe. However, the ordinance extended membership to children of male members who marry outside the tribe. The respondent claimed the rule discriminated on the basis of both sex and ancestry in violation of title 1 of the ICRA. (*Santa Clara Pueblo, supra,* 436 U.S. at pp. 51–52.)

The *Santa Clara Pueblo* court found that nothing on the face of title 1 of the ICRA purports to subject the tribes to the jurisdiction of the federal courts in civil actions for injunctive or declaratory relief. (*Santa Clara Pueblo, supra,* 436 U.S. at p. 59.) However, the court considered whether the relief sought by the respondent, although not expressly authorized by the ICRA, was nonetheless implicit in its terms. (*Ibid.*)

The court delineated two distinct and competing purposes of the ICRA: to strengthen the position of individual tribal members vis-à-vis the tribe and to promote the well-established federal policy of furthering Indian self-government. (*Santa Clara Pueblo, supra,* 436 U.S. at p. 62.) The court found that imposition of a federal cause of action for enforcement of the rights created in title 1 of the ICRA, however useful in securing compliance with 25 United States Code section 1302, would undermine the authority of tribal forums and impose serious financial burdens on financially disadvantaged tribes. (*Santa Clara Pueblo, supra,* 436 U.S. at p. 64.)

The court ultimately determined: "Tribal forums are available to vindicate rights created by the ICRA, and § 1302 has the substantial and intended effect of changing the law which these forums are obliged to apply. Tribal courts have repeatedly been recognized as appropriate forums for the exclusive adjudication of disputes affecting important personal and property

interests of both Indians and non-Indians. [Citations.] Nonjudicial tribal institutions have also been recognized as competent law-applying bodies. [Citation.] Under these circumstances, we are reluctant to disturb the balance between the dual statutory objectives which Congress apparently struck in providing only for habeas corpus relief. [Fns. omitted.]" (*Santa Clara Pueblo*, *supra*, 436 U.S. at pp. 65–66.)

██ In addition, "By not exposing tribal officials to the full array of federal remedies available to redress actions of federal and state officials[,] Congress may also have considered that resolution of statutory issues under [25 United States Code] § 1302, and particularly those issues likely to arise in a civil context, will frequently depend on questions of tribal tradition and custom which tribal forums may be in a better position to evaluate than federal courts." (*Santa Clara Pueblo*, *supra*, 436 U.S. at p. 71.)[2] Therefore, the Supreme Court found section 1302 does not impliedly authorize actions for declaratory or injunctive relief against either a tribe or its officers. (*Santa Clara Pueblo*, *supra*, 436 U.S. at p. 72.)

### III

Lorena Ackerman and the other plaintiffs contend Public Law 280 grants jurisdiction to California courts to consider their action for writ of mandate against Council members. As title 28 United States Code section 1360, Public Law 280 provides, in pertinent part: "[California] shall have jurisdiction over civil causes of action between Indians or to which Indians are parties[.]" Ackerman construes Public Law 280 to grant California courts jurisdiction over a dispute between a tribal member and the tribe. According to Ackerman, "Here in California, the role of tribal courts has been given to the State by Congress in PL 280."

Ackerman's assertion rests on very tenuous reasoning. Under Ackerman's theory, the *Santa Clara Pueblo* court determined that Congress rejected direct action by the federal courts, instead finding jurisdiction in "other courts." According to Ackerman, in most other states these are "tribal courts," but in California it is the state court.

Such reasoning turns *Santa Clara Pueblo* on its head. The Supreme Court discussed only tribal courts and nonjudicial tribal institutions as possessing

---

[2] As the court noted, "A tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community. [Citations.] Given the often vast gulf between tribal traditions and those with which federal courts are more intimately familiar, the judiciary should not rush to create causes of action that would intrude on these delicate matters." (*Santa Clara Pueblo*, *supra*, 436 U.S. at p. 72, fn. 32.)

jurisdiction over tribal matters. The Supreme Court did not leave jurisdiction open to "courts" in general or state courts in particular. The Supreme Court carefully explained its rationale for leaving disputes over the ICRA to tribal courts and institutions. This rationale does not support any conferral of jurisdiction on state courts.

■ As the Council points out, the Supreme Court explicitly denied that Public Law 280 confers jurisdiction in the states over the tribes themselves: "The Act itself refutes such an inference: there is notably absent any conferral of state jurisdiction over the tribes themselves." (*Bryan, supra,* 426 U.S. at pp. 388–389.) California courts are in accord. "No case has been cited to us, and we have found none, which concludes or even suggests, that 28 United States Code section 1360 [Public Law 280] conferred on California jurisdiction over the Indian tribes, as contrasted with individual Indian members of the tribes." (*Long v. Chemehuevi Indian Reservation* (1981) 115 Cal.App.3d 853, 857 [171 Cal.Rptr. 733].)

We find no merit in Ackerman's assertion that the courts of California have jurisdiction over disputes between tribal members and tribes through Public Law 280. As the trial court correctly observed, to extend jurisdiction to state courts would be inconsistent with the reasoning of *Santa Clara Pueblo.*

## IV

Ackerman argues the tribe's sovereign immunity is subject to the exception enunciated in *Ex parte Young* (1908) 209 U.S. 123 [52 L.Ed. 714, 28 S.Ct. 441] (*Young*). In *Young*, the Supreme Court found a suit challenging the constitutionality of a state official's action not barred by sovereign immunity. Ackerman draws a parallel between the Council and the official in *Young*, arguing the exception to immunity is applied against "abusive or overreaching officials [who] have attempted to shield themselves in a cloak of sovereign immunity."

However, as the Council points out, federal courts have imposed two requirements on litigants seeking to apply the *Young* exception to tribal officials. "According to the Second Circuit in *Garcia* [*v. Akwesasne Housing Authority* (2d Cir. 2001) 268 F.3d 76], there are at [*sic*] two qualifications to obtaining such prospective injunctive relief against tribal officials sued in their official capacity. 'First, any law under which [the plaintiffs] seek[] injunctive relief must apply substantively to the agency. . . . Second, [the plaintiffs] must have a private cause of action to enforce the substantive rule.' *Garcia,* 268 F.3d at 88." (*Bassett v. Mashantucket Pequot Museum and Research* (D.Conn. 2002) 221 F.Supp.2d 271, 278, fn. 12.)

■ Ackerman seeks to enforce both the ICRA and the tribe's constitution. However, in *Santa Clara Pueblo*, the Supreme Court found the ICRA does not confer a private right of action as an enforcement mechanism. Instead, the court found the Congress, in implementing 25 United States Code section 1303, decided that review by way of habeas corpus would adequately protect the individual interests at stake while avoiding unnecessary intrusions on tribal governments. The court also noted the Congress had considered and rejected proposals for federal review of alleged violations of the ICRA arising in a civil context. (*Santa Clara Pueblo, supra,* 436 U.S. at pp. 66–69.)

■ Nor does the Rancheria constitution provide a private right of action to enforce its provisions in state court. The constitution states: "The rights of the Redding Rancheria members are those which are guaranteed by the Indian Civil Rights Act of 1968." The constitution states the Council, in exercising powers of self-government, shall not violate the rights enumerated in the ICRA. In addition, the constitution grants the Council the power to adopt an enrollment ordinance and to ensure the ordinance is "reasonable, fair, and just and that the Ordinance reflects the will of the people." Nothing in this language creates a private right of action in state court to enforce those rights.

Since neither the ICRA nor the Rancheria constitution creates a private cause of action, Ackerman cannot invoke the exception codified in *Young*. We find no exception to the Rancheria's sovereign immunity.[3]

## DISPOSITION

The judgment is affirmed. The Rancheria shall recover costs on appeal.

Davis, Acting P. J., and Morrison, J., concurred.

Appellants' petition for review by the Supreme Court was denied December 15, 2004.

---

[3] Since we find the Rancheria entitled to sovereign immunity, we do not address the substance of Ackerman's due process arguments.